## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

**REBECCA D. ZELL**                                                                                          **PLAINTIFF**

**V.**                              **NO. 4:24-CV-00474 LPR-PSH**

**MARTIN J. O'MALLEY, Commissioner of**
**SOCIAL SECURITY ADMINISTRATION**                                         **DEFENDANT**

## RECOMMENDED DISPOSITION

This Recommended Disposition (Recommendation) has been sent to United States District Judge Lee P. Rudofsky. Either party may file written objections to this Recommendation. If objections are filed, they should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within 14 days of this Recommendation. If no objections are filed, Judge Rudofsky can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive the right to appeal questions of fact.

### I. **Introduction:**

On September 20, 2017, Rebecca D. Zell (Ms. Zell) filed a Title II application for disability and disability insurance benefits, and on October 27, 2017, she filed a Title XVI application for supplemental security income. (Tr. at 10). The applications were denied initially and upon reconsideration. *Id*. After a hearing, an

administrative law judge (ALJ) found that Ms. Zell was not disabled since her alleged onset date of October 1, 2016. *Id*. The Appeals Council denied her request for review of the hearing decision on October 15, 2020. *Id*. Ms. Zell filed a complaint on December 28, 2020 which this Court dismissed as untimely. *Zell v. Kijakazi*, No. 4:20-01498-JM-JJV, 2021 WL 3926042 (E.D. Ark. Sept. 1, 2021).

On January 27, 2021, Ms. Zell again filed a Title II application for a period of disability and disability insurance, alleging that her disability began on January 31, 2020. (Tr. at 10). The application was denied initially and upon reconsideration. *Id*. After a hearing, an ALJ issued an unfavorable decision, finding that Ms. Zell had not been under a disability from January 31, 2020 through December 31, 2021.[1] (Tr. at 10-25). In that decision, the ALJ also declined to reopen the prior application. (Tr. at 10). The Appeals Council denied Ms. Zell's request for review of the hearing decision. (Tr. at 1-6). The ALJ's decision now stands as the final decision of the Commissioner, and Ms. Zell has requested judicial review.

For the reasons stated below, this Court should affirm the ALJ's decision.

---

[1] Ms. Zell was last insured for Title II benefits on December 31, 2021, which means the end of the relevant time-period for determination of benefits is on that date. (Tr. at 13).

## II. The Commissioner's Decision:

The ALJ found that Ms. Zell had not engaged in substantial gainful activity during the relevant time period of January 31, 2020 through December 31, 2021.[2] (Tr. at 13). At Step Two, the ALJ found that Ms. Zell had the following severe impairments: depression, anxiety, post-traumatic stress disorder, panic disorder, uncomplicated bereavement, asthma, chronic obstructive pulmonary disease, age-related osteoporosis, lumbago, degenerative disc disease, dextroscoliosis, levoscoliosis of the thoracic spine, and cervical spur. *Id.*

After finding that Ms. Zell's impairments did not meet or equal a Listed Impairment (Tr. at 14-17),[3] the ALJ determined that Ms. Zell had the residual functional capacity (RFC) to perform work at the medium exertional level, with additional limitations: (1) she can have no more than occasional exposure to irritants such as fumes, odors, dust, gases, and poorly ventilated areas; (2) she can use judgment to make simple work-related decisions; (3) she can maintain concentration, persistence, and pace for simple tasks; (4) she can understand, carry

---

[2] The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g).

[3] 20 C.F.R. Part 404, Subpt. P, App'x 1, Adult Listing of Impairments (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).

out, and remember simple work instructions and procedures; (5) she can adapt to changes in the work setting that are simple, predictable, and can be easily explained; and (6) she can have no more than occasional interaction with co-workers, supervisors, and the public. (Tr. at 17).

At Step Four, the ALJ determined that, based on Vocational Expert testimony about a hypothetical individual of Ms. Zell's age, education, work experience, and RFC, Ms. Zell was able to perform past relevant work as a Housekeeper Cleaner and Store Laborer. (Tr. at 23-25). The VE testified that there were also other jobs available that Ms. Zell could perform in the national economy. *Id.* Therefore, the ALJ found that Ms. Zell was not disabled. *Id.*

### III. **<u>Discussion</u>:**

    A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> Our review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's

> decision; we also take into account whatever in the record fairly detracts from that decision. Reversal is not warranted, however, merely because substantial evidence would have supported an opposite decision.

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

### B. Ms. Zell's Arguments on Appeal

Ms. Zell contends that the evidence supporting the ALJ's decision to deny benefits is less than substantial. She argues that the RFC was insufficient because it did not contain a restriction on Ms. Zell's ability to bend and stoop. She also asserts that the ALJ did not fully consider her shoulder impairment.

While Ms. Zell suffered from mental impairments, her claims focus on

physical limitations, so the Court will limit its discussion thereto.[4]

Ms. Zell underwent spine x-rays in February 2020. A cervical spine x-ray showed a degenerative cervical facet spur. (Tr. at 20, 773-775). Thoracic spine x-rays showed mild levoscoliosis in the lower thoracic spine. *Id*. Lumbar x-rays showed dextroscoliosis of the upper mid lumbar spine. *Id*. There was moderate disc degeneration at L4-5 with arthropathy at L4-5 and L5-S1. *Id*. Ms. Zell had a positive straight-leg raise test in January 2020 (Tr. at 20, 499). In December 2021, a CT scan of the lumbar spine revealed osteoporosis but no compression deformities. (Tr. at 785-786). These mild-to-moderate findings substantiate Ms. Zell's alleged pain, but the balance of the record does not suggest her conditions were altogether disabling. For example, Ms. Zell reported to her PCP that she was doing well in June 2021. (Tr. at 20-21, 538-540). Ms. Zell had some tenderness in her back, but her PCP merely continued her on her current pain management medications. *Id.* Ms. Zell's doctors encouraged her to walk and exercise.[5] (Tr. at 67). Ms. Zell said she treated her back pain with a heating pad and pain

---

[4] See *Noerper v. Saul*, 964 F.3d 738, 741 (8th Cir. 2020) ("Although our detailed discussion is targeted, we have considered the claimant's arguments and the record as a whole as to all of her impairments and their cumulative effect on her limitations.")

[5] A physician's recommendation to exercise suggests that a claimant has an increased functional capacity. See *Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009).

medications, as well as over-the-counter medication.[6] (Tr. at 59) She said that sitting in a comfortable chair with a heating pad helped with pain. (Tr. at 47).

Ms. Zell attended physical therapy for low back pain a handful of times at the end of the relevant time-period. In December 2021, Ms. Zell told her physical therapist that her pain was a 2 out of 10, and at its worse it increased to a 6 out of 10. (Tr. at 817-21). Her therapist noted good rehabilitation potential, and she wrote that Ms. Zell tolerated the therapy exercises well.

One of Ms. Zell's physical therapists conducted a functional capacity evaluation in March 2020; he found that Ms. Zell was able to perform light work. (Tr. at 558-563). He found that her ability to bend was limited, but that she accomplished all activities of the evaluation without modification. (Tr. at 558). The therapist noted that Ms. Zell drove 1.5 hours to the clinic for the evaluation and that Ms. Zell said she had "not really focused on caring for her back." (Tr. at 559-560).

Ms. Zell complained of debilitating left shoulder pain, and her PCP recorded a "frozen shoulder" with impingement (Tr. at 525, 667). But a January 2021 x-ray of the shoulder showed no dislocation, fracture, or arthritis.[7] (Tr. at 776). Ms. Zell

---

[6] The need for only conservative treatment contradicts allegations of disabling conditions. *Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993).
[7] Normal clinical findings may support an ALJ's decision to deny benefits. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001).

7

testified at the hearing that physical therapy helped her shoulder pain. (Tr. at 53).

Ms. Zell's daily activities also suggest that she was not as limited as she alleges. She helped her sister pack boxes and move to Texas in August 2020. (Tr. at 68-72, 511-516). She could shop in stores, attend to personal care, take care of her pet, and cook.[8] (Tr. at 338-342, 502-602). She reported that she was "running around to doctors' appointments" in March 2020. (Tr. at 600). She was excited about attending a grief share group. (Tr. at 598). She traveled to Florida for a week's vacation. (Tr. at 70-71). These activities undermine Ms. Zell's claims that she is totally disabled.

1. **RFC argument**

Ms. Zell contends that she had difficulties with bending and stooping, and that the ALJ should have included such limitations in the RFC.[9] However, as Defendant correctly points out, Ms. Zell bases this claim on subjective complaints of pain, rather than any objective evidence of a functional restriction. As demonstrated above, the objective findings revealed no more than mild-to-

---

[8] Such daily activities undermine her claims of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003).
[9] A claimant's RFC represents the most she can do despite the combined effects of all of her credible limitations and must be based on all credible evidence. *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011). In determining the claimant's RFC, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments. *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996).

moderate conditions and Ms. Zell could perform a variety of daily activities which required bending and stooping. Ms. Zell did not require surgery or see any specialist like an orthopedic doctor. She did not require an assistive device to walk. The physical therapist indicated a limited ability to bend, but the ALJ found this opinion to be inconsistent with the minimal objective findings and minimal treatment. (Tr. at 22). Moreover, the physical therapist did not place any work restriction, with respect to bending, on Ms. Zell.

Ms. Zell claims that medium work (the exertional level in the RFC) always requires frequent bending and stooping. Social Security Ruling 83-10 actually states that medium work *usually* requires bending and stooping, without mentioning the frequency of bending and stooping throughout the workday.[10] Contrary to Ms. Zell's argument, a closer look at Ms. Zell's past relevant jobs and the jobs identified by the VE shows that they require no more than occasional bending, and only one job may require frequent stooping (the Store Laborer); the rest require no more than occasional stooping.[11] A job limitation to no more than

---

[10] https://www.ssa.gov/OP_Home/rulings/di/02/SSR83-10-di-02.html

[11] See *Dictionary of Occupational Titles* (Fourth Edition, Revised 1991) (DOT) and its companion publication, the *Selected Characteristics of Occupations defined in the Revised Dictionary of Occupational Titles* (SCO). https://occupationalinfo.org/dot_search.html; https://obflegal.com/httpdocs/files/SCO.pdf. VEs rely on these publications for explanations of the frequency required for exertional work tasks. Looking at the SCO, the jobs identified for Ms. Zell require no more than occasional bending and stooping, with one exception: the Store Laborer position, a past relevant job, requires frequent stooping. But the other jobs identified at

occasional bending squares up with the physical therapist's statement that Ms. Zell is somewhat limited in her ability to bend and Ms. Zell's daily activities bely her assertion that she cannot frequently stoop. There is no contradiction.

Ms. Zell fails to show that she could not perform the jobs identified. She merely claims that because her back condition is a severe impairment, she could not bend and stoop. (Doc. No. 7 at p. 8). The labeling of an impairment as severe does not mean a claimant is disabled; there must be a specific functional loss established in the record.[12] Subjective assertions do not establish a functional loss.[13] And Ms. Zell has not shown a functional loss that precludes bending and stooping. She treated conservatively, physical therapy and heating pads helped her pain, and she could perform a variety of daily activities. An ALJ is only required to include limitations in the RFC that he finds credible.[14] The RFC included all

---

Step Five require no more than occasional stooping or bending. Ms. Zell cannot point to anything in the objective evidence of record showing that she could not perform the bending and stooping requirements of any of these jobs.

[12] A "severe" impairment significantly limits a claimant's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c); 416.920(c). The claimant has the burden of proving that an impairment is severe. *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006). A diagnosis alone does not infer disability; there must be a functional loss establishing the inability to engage in substantial gainful activity. See *Trenary v. Bowen*, 898 F.2d 1361, 1364 (8th Cir. 1990).

[13] Functional limitations must have a basis in the medical evidence and are not established based solely on a claimant's statement of symptoms. 20 C.F.R. §§ 404.1508, 416.908; *Harris v. Barnhart*, 356 F.3d 926, 930 (8th Cir. 2004).

[14] An ALJ is not required to include limitations in the RFC that are not supported by the evidence in the record. *McGeorge v. Barnhart*, 321 F.3d 766, 769 (8th Cir. 2003).

credible limitations, and the jobs identified did not outstrip Ms. Zell's abilities.[15]

### 2. Shoulder impairment

Ms. Zell claims that the ALJ should have held that her shoulder impairment was severe at Step Two. She now argues that when she told the ALJ that physical therapy mitigated her shoulder pain, she misspoke. She claims that because shoulder pain and impingement were still listed as assessments in 2021, her shoulder impairment was severe. (Tr. at 667). However, as noted above, an x-ray in January 2021 of the left shoulder was normal. (Tr. at 776). She did not require aggressive treatment or see a specialist. Physical therapy notes showed she was meeting her therapy goals. (Tr. at 575-577). And again, Ms. Zell could perform a variety of daily activities. The ALJ did not err in his evaluation of severe impairments at Step Two.

## IV. Conclusion:

There is substantial evidence to support the Commissioner's decision that Ms. Zell was not disabled. The RFC incorporated all of Ms. Zell's credible limitations and the ALJ fulfilled his duty at Step Two. The case should be dismissed, with prejudice.

---

[15] While Ms. Zell argues that the RFC should have included manipulative limitations on reaching, handling, or fingering, she has not identified any evidence supporting that claim. Doc. No. 7 at p. 10; Doc. No. 9 at p. 13. She has also failed to show that she could not perform jobs with heat or atmospheric exposure. *Id*.

IT IS SO ORDERED this 21ˢᵗ day of November, 2024.

_____
UNITED STATES MAGISTRATE JUDGE